**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION**

| | |
|---|---|
| **RICHARD ANDEL, JIMMY FLUKINGER, JERRY KROGSGAARD, and DELBERT LAWRENCE, Each Individually and on Behalf of all Other Persons Similarly Situated Current and Former Workers/Employees of Defendant,** | § § § § § § § **Civil No. 6:10-cv-00036** § |
| **Plaintiffs** | § § |
| **vs.** | § § |
| **PATTERSON-UTI DRILLING COMPANY, LLC,** | § § § |
| **Defendant.** | § |

**PLAINTIFFS' RESPONSE TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiffs RICHARD ANDEL, JIMMY FLUKINGER, JERRY KROGSGAARD and

DELBERT LAWRENCE, each individually and on behalf of all other persons similarly situated

current and former workers/employees of Defendant, ask the court to deny Defendant

PATTERSON-UTI DRILLING COMPANY, LLC's Motion for Summary Judgment.

## INTRODUCTION

1.     Plaintiffs    are    RICHARD    ANDEL,    JIMMY    FLUKINGER,    JERRY

KROGSGAARD and DELBERT LAWRENCE, each individually and on behalf of all other

persons similarly situated current and former workers/employees of Defendant, herein collectively

referred to as Plaintiffs; Defendant is PATTERSON-UTI DRILLING COMPANY, LLC.

2.     This is an action under the Fair Labor Standards Act (FLSA) seeking overtime pay

from Defendant Patterson-UTI Drilling Company LLC ("Patterson"). Plaintiffs, who worked as

welders for Patterson, allege that they were misclassified as independent contractors.

3.     Pending before the Court is Defendant's Motion for Summary Judgment (Doc. #44).   The motion insists that "there is no question of material fact as to any Plaintiff's independent contractor status",[1] and hence that Patterson is entitled to judgment as a matter of law.   For three reasons, the motion is without merit.

4.     First, it discusses only evidence Patterson contends supports *its* view of the controversy, while ignoring evidence to the contrary. Nowhere mentioned in the motion, for example, is the fact that Plaintiffs worked for Patterson for prolonged periods of time (ranging from 14 months, at the shortest, to nearly a decade) and that, when they did so, they worked for Patterson exclusively because the lengthy hours demanded by Patterson, and Plaintiffs' inability to control their schedule, effectively precluded them from working elsewhere. The evidence reveals, indeed, that Patterson regimented Plaintiffs' working conditions with an iron fist: it dictated their work schedule and hours; it determined the days and number of hours they had to work; it set their hourly pay rate; and it told them what work to do, where to do it, and how.   On this record, Patterson's contention that there is no question of material fact as to any Plaintiff's independent contractor status is scarcely plausible, much less persuasive.

5.     Second, if one disregards the conflicting evidence, and examines solely the record excerpts that Patterson has selectively chosen to emphasize, even this slanted version of the record fails to support summary judgment because many of the assertions therein are factually inaccurate or legally immaterial.

---

[1]Defendant's Motion for Summary Judgment (Doc. #44), p. 5 ¶ 1.

6.     Third, it would make no difference in any event even if Patterson were right about some of the pertinent legal criteria.   Determining whether Plaintiffs are employees or independent contractors requires balancing *all* the pertinent criteria, and Patterson has not remotely shown that it is entitled to prevail as a matter of law under this standard.

7.     Plaintiffs therefore oppose Patterson's Motion for Summary Judgment, and urge that it be denied.

## SUMMARY JUDGMENT EVIDENCE

8.     Plaintiffs rely on the following summary judgment evidence which is hereby incorporated herein by reference as if fully set forth at length:

a)      Exhibit 1 – Declaration of Richard Andel.

b)      Exhibit 2 – Declaration of Jerry Krogsgaard.

c)      Exhibit 3 – Declaration of Delbert Lawrence.

d)      Exhibit 4 – Declaration of Jimmy Flukinger.

e)      Exhibit 5 – Deposition of Richard Andel.

f)      Exhibit 6 – Deposition of Jerry Krogsgaard.

g)      Exhibit 7 – Deposition of Delbert Lawrence.

h)      Exhibit 8 – Deposition of Jimmy Flukinger.


**I.      THERE IS AMPLE EVIDENCE TO SUPPORT A FINDING THAT PLAINTIFFS WORKED FOR PATTERSON AS EMPLOYEES, NOT AS INDEPENDENT CONTRACTORS.**

9.     Plaintiffs concur with Patterson on one point: deciding whether they worked for Patterson as employees or independent contractors is governed by the five-part "economic reality"

test.[2]   (For brevity's sake, however, Plaintiffs will organize their discussion around each *factor* rather than each Plaintiff—although the evidence as to each Plaintiff will, of course, be addressed—because doing so avoids needless redundancy and promotes efficiency of analysis.) Notwithstanding Patterson's contention to the contrary, there is evidence supporting Plaintiffs' status as employees under each of the five factors.

<blockquote>
A.   *There Is Evidence in the Record From Which a Fact-Finder Could Reasonably Find that Plaintiffs Worked Exclusively for Patterson over a Substantial Period of Time.*
</blockquote>

10.   The first "economic reality" criterion, i.e., the permanency of the relationship, focuses on whether the workers generally remained in their positions for a significant period of time.  *Hopkins v. Cornerstone America*, 545 F.3d 338, 346 (5th Cir. 2008), *cert. denied*, __ U.S. __, 129 S.Ct. 1635, 173 L.Ed.2d 998 (2009).   Plaintiff Richard Andel worked for Patterson from 2000 through 2009; Jerry Krogsgaard, for several extended periods (2½ years, then 5 years) from 2000 through 2009; Delbert Lawrence, for approximately two years; Jimmy Flukinger, a year and two months.[3]   When Plaintiffs worked for Patterson, moreover, they did so exclusively, working for no one else.[4]The time periods during which Plaintiffs worked for Patterson, ranging from 14 months (Mr. Flukinger) to nine years (Mr. Andel), were substantial by any measure.   And, as confirmed by precedent, they are more than enough to support a conclusion, under the first

---

[2] *See* Defendant's Motion for Summary Judgment (Doc. #44), pp. 4-5 (citing *Thibault v. Bellsouth Telecommunications, Inc.*, 612 F.3d 843 (5th Cir. 2010)).

[3] Declaration of Richard Andel [hereinafter "Andel Decl."] (Ex. 1) ¶ 3; Declaration of Jerry Krogsgaard [hereinafter "Krogsgaard Decl."] (Ex. 2) ¶ 2; Declaration of Jimmy Flukinger [hereinafter "Flukinger Decl."] (Ex. 4) ¶ 3; Declaration of Delbert Lawrence [hereinafter "Lawrence Decl."] (Ex. 3) ¶ 3; Deposition of Jimmy Flukinger (Ex. 8) [hereinafter "Flukinger Depo."] 9:7-15; Deposition of Delbert Lawrence (Ex. 7) [hereinafter "Lawrence Depo."] 9:13-23, 11:11, 80:2-19, 81:19 to 82:25; Deposition of Richard Andel (Ex. 5) [hereinafter "Andel Depo."] 134:4-6.

[4] Krogsgaard Decl. (Ex. 2) ¶ 3; Lawrence Depo. (Ex. 7) 9:13-21; Andel Depo. (Ex. 5) 134:4-6.

"economic reality" criterion, that Plaintiffs were employees.

11.    In *Cromwell v. Driftwood Elec. Contractors, Inc.*, 348 Fed. Appx. 57 (5th Cir. 2009), the Fifth Circuit explained the divergent results in *Robicheaux v. Radcliff Material, Inc.*, 697 F.2d 662 (5th Cir. 1983), where welders were held to be employees under the FLSA, and *Carrell v. Sunland Const., Inc.*, 998 F.2d 330 (5th Cir. 1993), where they were deemed independent contractors: "[t]he most significant difference between the facts in these cases, in terms of the economic reality of whether the plaintiffs were economically dependent upon the alleged employer, was that the *Robicheaux* welders worked on a steady and reliable basis over a substantial period of time exclusively with the defendant, ranging from *ten months to three years*, whereas the *Carrell* welders had a project-by-project, on-again-off-again relationship with the defendant, with the average number of weeks that each welder worked for the defendant each year being relatively low, ranging from three to sixteen weeks."   348 Fed. Appx. at 60-61 (emphasis added); but see, *Baker v. Flint Eng'g & Const. Co.*, 137 F3d 1436, 1442 (10th Cir. 1998) (holding that rig welders were employees even though the Plaintiffs rarely worked for Defendant for more than 2 months at a time and rarely worked for Defendant more than 3 months of any one year period).   If working exclusively with a defendant for periods ranging from ten months to three years supports a finding of employee status, surely doing so for periods from 14 months to nine years leads to the same conclusion. Likewise, the fact that Plaintiffs were not prohibited from seeking employment elsewhere is irrelevant. "It is not what the operators *could* have done that counts, but as a matter of economic reality what they actually *do* that is dispositive.   *Hopkins v. Cornerstone America*, 545 F.3d at 345, citing *Brock v. Mr. W. Fireworks, Inc.*, 814 F.2d at 1047.

     B.     *There Is Evidence in the Record From Which a Fact-Finder Could Reasonably Find that Patterson Exercised Extensive Control over Plaintiffs' Working Conditions.*

12.     One indication of control, or lack thereof, is the amount of freedom to choose one's working hours. *See, e.g.*, *Herman v. Express Sixty-Minutes Delivery Serv., Inc.*, 161 F.3d 299, 303 (5th Cir. 1998), *reh'g denied*, 174 F.3d 200 (5th Cir. 1999) (delivery drivers who set their own hours and days of work were independent contractors, whereas those who reported for work at a specified time and worked a set number of hours determined by the shipper were employees). Patterson determined Plaintiffs' work schedule and hours, required them to arrive at 7:00 a.m., and dictated the days and number of hours they had to work.[5]

13.     Patterson also unilaterally set Plaintiffs' hourly pay rate.[6]   As Patterson conceded earlier in this case, fixing the hourly rate and the hours of work, while not dispositive, is evidence of "*some* control".[7]   *Cromwell v. Driftwood Elec. Contractors, Inc.*, 348 Fed. Appx. 57 (5th Cir. 2009)

14.     Furthermore, Patterson told Plaintiffs what work to do,[8] where to do it,[9] and

---

[5]Andel Decl. (Ex. 1) ¶¶ 5, 8; Krogsgaard Decl. (Ex. 2) ¶ 3; Flukinger Decl. (Ex. 4) ¶ 4; Lawrence Decl. (Ex. 3) ¶¶ 5, 8, 10; Flukinger Depo. (Ex. 8) 61:3-11, 63:10-14, 80:7-11; Lawrence Depo. (Ex. 7) 90:14-17; Andel Depo. (Ex. 5) 169:24 to 170:9, 177:14 to 179:3, 200:13-16, 201:15-25. Krogsgaard Depo (Ex. 6) 150:3 to 151:3.

[6]Flukinger Depo. (Ex. 8) 18:20 to 20:9; Lawrence Depo. (Ex. 7) 15:6-7, 102:13-16, 142:25 to 143:1; Andel Depo. (Ex. 5) 106:12-14, 155:10-15, 161:25 to 162:14. Krogsgaard Depo (Ex. 6) 103:18 to 105:20.

[7]Defendant's Response to Plaintiffs' Motion for Conditional Certification (Doc. #21), p. 5 ¶ 3 (quoting *Carrell v. Sunland Const., Inc.*, 998 F.2d 330, 334 (5th Cir. 1993)) (emphasis added by Patterson).

[8]Andel Decl. (Ex. 1) ¶¶ 10, 16; Lawrence Decl. (Ex. 3) ¶¶ 10, 16; Flukinger Depo. (Ex. 8) 118:20 to 119:21; Andel Depo. (Ex. 5) 88:23 to 89:2-17.

[9]Andel Decl. (Ex. 1) ¶¶ 4, 7; Lawrence Decl. (Ex. 3) ¶¶ 4, 7; Andel Depo. (Ex. 5) 104:8 to 105:13.

---

how.[10]   Delbert Lawrence succinctly depicted the straightjacket imposed by Patterson on Plaintiffs when he testified in his deposition that "[t]he only thing I could make the choice on what to use or what to do was my own personal tools. . . .   [I]f they said, 'Build it just like that,' I had to build it just like that."[11]  In a very similar statement Jerry Krogsgaard testified as follows:

> Q.     What exactly do you mean by that?
>
> A.     What I mean, I mean, we couldn't, we didn't make the judgments as far as building stuff or what we could use to do it with, or we had to follow Patterson's instructions.
>
> Q.     What kind of instructions did Patterson do? Did you get written instructions?
>
> A.     Yeah, We had anywhere from writing it on a piece of iron, to drawings, to pictures as to how to build a particular project, or then, he would tell you what to weld it, you know, what you had to weld it with or.[12]

The Plaintiffs' situation is almost identical to that of the welders in *Baker v. Flint Eng'g & Const. Co.*, where the Court held that the hours Plaintiffs were required to work made it practically impossible to work for other employers.   137 F.3d 1436, 1441 (10th Cir. 1998).  "In short, very little about the Plaintiffs' work situation makes it possible to view Plaintiffs as persons conducting their own business.   *Id.*   See also *Cromwell v. Driftwood Elec. Contractors, Inc.*, 348 Fed.Appx. 57, 61 (5th Cir. 2009).

> C.     *There Is Evidence in the Record From Which a Fact-Finder Could Reasonably Find that Patterson's Capital Investment Far Exceeded Plaintiffs'.*

15.     The relative-investment factor compares each worker's individual investment to

---

[10]Andel Decl. (Ex. 1) ¶ 11; Lawrence Decl. (Ex. 3) ¶ 11; Andel Depo. (Ex. 5) 91:1-10.

[11]Lawrence Depo. (Ex. 7) 168:8-11.

[12] Krogsgaard Depo. (Ex. 6) 145:18 to 146:3.

---

that of the alleged employer.   *Herman v. Express Sixty-Minutes Delivery Serv., Inc.*, *supra*, 161 F.3d at 304.   With regard to this criterion, Patterson is right, but for the wrong reasons: there is no genuine issue of material fact here because the evidence is so overwhelming *in favor of Plaintiffs*.

16.    The Defendant has spent substantial energy detailing the minutia of each welder's equipment. Significantly, they have utterly failed to demonstrate that the equipment owned by each welder has any bearing in the economic realities test. There is no evidence that Patterson compensated welders with a new truck more than a welder with an old truck. There is no evidence that Patterson compensates welders with the chop saws more than those who did not have chop saws. This is in contrast to Jerry Krogsgaard's current employer that recognizes that Mr. Krogsgaard is an employee and pays Mr. Krogsgaard overtime.[13]   On top of this Mr. Krogsgaard's current employer pays a premium for certain types of equipment.[14]  While working for Patterson, the specific equipment provided by each welder has little or no effect on their compensation. Instead, the compensation was based solely on the number of hours they worked and the hourly rate dictated by Patterson.   *Robicheaux v. Radcliff Material, Inc.*, 697 F.2d at 666.

17.    Even by Patterson's calculation, the most any Plaintiff invested in equipment, supplies, etc. does not exceed roughly $150,000.[15]   Patterson, in contrast, provided several workyards, plus virtually all the capital-intensive equipment (e.g., cranes, forklifts, winch trucks,

---

[13]  Krogsgaard Depo (Ex. 6) 130:15 to 131:12

[14]  Krogsgaard Depo (Ex. 6) 159:25 to 160:10.

[15]*See* Defendant's Motion for Summary Judgment (Doc. #44), p. 10 (Mr. Flukinger's investment is at least ten times the $15,000 spent by the welders in *Carrell v. Sunland Const., Inc.*, i.e., $150,000); *id.*, p. 14 (itemizing roughly $56,000 in expenses incurred by Mr. Lawrence); *id.*, p. 20 (Mr. Andel's investment is more than twice the $15,000 in *Carrell*, i.e., $30,000); *id.*, pp. 25-27 (itemizing roughly $14,000 in expenses incurred by Mr. Lawrence). *See also* Defendant's Response to Plaintiffs' Motion for Conditional Certification (Doc. #21), pp. 19-20 (chart summarizing Plaintiffs' expenses).

pole trucks, wire machine welders, generators, tanks, steel), and, in addition, spent millions of dollars purchasing and renovating each rig.[16]   The arithmetic is a no-brainer: Patterson's millions of dollars invested dwarf Plaintiffs' thousands. *Hopkins v. Cornerstone America*, 545 F.3d at 344; *Baker v. Flint Eng'g & Const. Co.*, 137 F3d at 1442.

> D.   *There Is Evidence in the Record From Which a Fact-Finder Could Reasonably Find that Patterson Largely Determined Plaintiffs' Opportunity for Profit or Loss.*

18.   As noted above, Patterson determined when Plaintiffs worked, for how many hours, and at what hourly rate.   Moreover, because of the long hours and their inability to control their schedule at Patterson, Plaintiffs could not work elsewhere.[17]   In practical terms, therefore, Patterson largely controlled Plaintiffs' opportunity for profit or loss.   *See Cromwell v. Driftwood Elec. Contractors, Inc.*, *supra*:

> The permanency and extent of this relationship, coupled with Driftwood and BellSouth's complete control over Cromwell and Bankston's schedule and pay, *had the effect of severely limiting any opportunity for profit or loss* by Cromwell and Bankston. Although it does not appear that Cromwell and Bankston were actually prohibited from taking other jobs while working for Driftwood and BellSouth, as a practical matter the work schedule establish by Driftwood and BellSouth precluded significant extra work.

348 Fed. Appx. at 61 (emphasis added). The Plaintiffs could not bid on jobs at a set amount or set their own hours or schedule, but were hired on a per hour basis rather than a flat rate or per job basis. *Hopkins v. Cornerstone America*, 545 F.3d at 1441.   Thus, "there is no incentive for plaintiffs to work faster or more efficiently in order to increase their opportunity for profit." *Baker*

---

[16]Andel Decl. (Ex. 1) ¶ 12; Lawrence Depo. (Ex. 7) 24:20 to 25:12; Andel Depo. (Ex. 5) 69:15-16, 70:13-20. Krogsgaard Depo (Ex. 6) 110:16-25.

[17]Andel Decl. (Ex. 1) ¶ 8; Lawrence Decl. (Ex. 3) ¶ 8.

*v. Flint Eng'g & Const. Co.*, 137 F3d at 1441. "In short the [rig welders] have no control over the essential determinants of profits in a business, and no direct share in the success of the business." *Id*; citing *Dole v. Snell*, 875 F.2d 802, 810 (10th Cir. 1989).

> E.     *There Is Evidence in the Record From Which a Fact-Finder Could Reasonably Find that Merely Moderate Skill and Initiative Were Needed to Perform Rig Welding for Patterson.*

19.     At Patterson, Plaintiffs welded iron, a task which, unlike pipe welding, for example, requires only moderate skill.[18]  Fifth Circuit precedent, indeed, so confirms.  *See Carrell v. Sunland Const., Inc.*, 998 F.2d 330, 333 (5th Cir. 1993) ("[p]ipe welding, *unlike other types of welding*, requires specialized skills") (emphasis added); *Robicheaux v. Radcliff Material, Inc.*, 697 F.2d at 666 (5th Cir. 1983) (skill required for ordinary welding was "moderate").

20.     Nor was much initiative required given that, as explained above, Patterson dictated what to do, and when, where and how to do it.  *See Carrell v. Sunland Const., Inc.*, *supra*, 998 F.2d at 333 (although considerable initiative was required for welders to find work, "once on a job, a welder's initiative was limited to decisions regarding his welding equipment and the details of his welding work").

21.     Furthermore, when placed in the context of the economic realities test, the Defendant has failed to produce any evidence that more skilled workers were compensated substantially more than welders with a mere moderate skill set. Thus the skill of the welder had little or no bearing on the welder's economic dependence while working for the Defendant. *Baker v. Flint Eng'g & Const. Co.,* 137 F.3d at 1442-1443.

---

[18]Andel Decl. (Ex. 1) ¶ 11; Lawrence Decl. (Ex. 3) ¶ 11; Andel Depo. (Ex. 5) 56:13-23.

---

## II.   THE EVIDENCE EMPHASIZED BY PATTERSON IS OFTEN MISLEADINGLY INCOMPLETE AND LEGALLY IMMATERIAL.

22.   Many of the "facts" recited by Patterson are grossly incomplete and, in the context of additional testimony selectively omitted by Patterson, disclose a reality quite different from that vouched by Patterson.   Others, while accurate, are inconsequential.

23.   Among the half-truths, for example, is Patterson's statement that Mr. Flukinger formed his own company (DP Services, Inc.) while working for Patterson.[19]   The impression, of course, is that he was *conducting business* as DP Services while working for Patterson.   That is false.   In the very deposition excerpt cited by Patterson, Mr. Flukinger further testified that, until approximately one week before his deposition—i.e., long after he ceased working for Patterson—he had not used DP Services to perform any work.[20]   Furthermore, the 5th Circuit has held that the fact that a worker has worked for others as a contractor is not a determinative of his status with the Defendant. *Robicheaux v. Radcliff Material, Inc.*, 697 F.2d at 667.

24.   Another example is the assertion, regarding Plaintiffs' ability to control their income, that "Mr. Lawrence agreed that the income he received from providing welding services 'would be measured by the rate that [he] charged, minus all the expenses [he] incurred."[21]   "The rate that *he charged*" (emphasis added) implies that *Mr. Lawrence* set his rate, when, as shown earlier, he and other welders had no say in the matter.   Patterson unilaterally dictated rates in a

---

[19]Defendant's Motion for Summary Judgment (Doc. #44), p. 6 ¶ 3.

[20]Flukinger Depo. (Ex. 8) 6:25 to 7:6.

[21]Defendant's Motion for Summary Judgment (Doc. #44), p. 14 ¶ 3 (quoting Lawrence Depo. 15:17-22, 20:3-12).

---

take-it-or-leave-it fashion.   Ironically, indeed, Mr. Lawrence so testified a mere 10 lines before the excerpt quoted by Patterson.[22]

25.    Equally misleading is Patterson's contention that Mr. Flukinger "testified that he was free to leave work in the middle of the day if he became ill."[23]   It is difficult to imagine that any employer would require that a ill worker to continue to work unless there were some sort of extenuating circumstances.   Immediately before that excerpt, he unequivocally testified that he was *not* free to leave work without permission:

> Q.    *Did you ever have to ask anybody's permission before you left before 5:00 o'clock?*
>
> A.    *Yes, sir.*
>
> Q.    What would cause you to leave before 5:00 o'clock?
>
> A.    Just something come up.  I mean, whether it be family, personal, whatever, you know, don't feel good, get something in your eye, have to go to the doctor, you know, just whatever.  But *I had to tell somebody and had to get it okayed*[.][24]

26.    Among Patterson's many immaterial assertions is that Mr. Flukinger's work for Patterson occurred over two periods, one lasting six to eight months, followed by another from late February until mid-November 2009.[25]   For ease of discussion, let us ignore the first interval (which, of course, artificially tilts the scales in favor of Patterson) and consider the second one alone.   Late February until mid-November 2009 is roughly ten months, the same interval deemed sufficiently permanent to support an employee rather than independent contractor determination in

---

[22]*See* Lawrence Depo. (Ex. 7) 15:6-7.

[23]Defendant's Motion for Summary Judgment (Doc. #44), p. 7 ¶ 2 (citing Flukinger Depo. 88:1-10).

[24]Flukinger Depo. (Ex. 8) 87:16-25 (emphasis added).

[25]Defendant's Motion for Summary Judgment (Doc. #44), pp. 5-6.

*Robicheaux v. Radcliff Material, Inc.*, *supra*.   Hence the legal implication of Patterson's own analysis is that Mr. Flukinger was an employee rather than an independent contractor.

27.     Another red herring is that Plaintiffs could have looked elsewhere for work because no one at Patterson expressly forbade them from doing so.[26]   To put the matter bluntly, so what? Of course Plaintiffs could have quit.   They were not indentured servants, after all.   But the same is true of employees in general.   The relevant issue is not whether the working relationship is *mandatory*, but rather *transitory* (*Bamgbose v. Delta-T Group, Inc.*, 684 F.Supp. 660, 671 (E.D. Pa. 2010)), and whether, *while still working for the alleged employer*, the plaintiff is able to work for others as well.   *Cromwell v. Driftwood Elec. Contractors, Inc.*, *supra*, 348 Fed. Appx. at 61. As discussed earlier, the long hours imposed by Patterson made it impossible for Plaintiffs to work elsewhere while still working for Patterson.

28.     Even more remarkably, the Defendant asserts that Mr. Krogsgaard was paid on a per project basis.[27] This is simply not true. In fact in their original answer the Defendant admitted that the welders it employed were paid on an hourly basis not a project by project or flat fee basis.[28]

29.     It is equally hard to understand how the fact that Mr. Krogsgaard lived in a travel trailer has any relevance to anything. It was simply where he lived and slept.[29] He had no other physical residence.   Similarly, the fact that welders at times needed to leave work to get supplies applies equally to welders classified as employees and welders who are improperly classified as

---

[26]Defendant's Motion for Summary Judgment (Doc. #44), p. 3 ¶ 2; *id.*, p. 6 ¶ 2 (Mr. Flukinger); *id.*, p. 11 ¶ 1 (Mr. Lawrence); *id.*, p. 15 ¶ 2 (Mr. Andel); *id.*, p. 22 ¶ 2 (Mr. Krogsgaard).

[27] Defendant's Motion for Summary Judgment (Doc. #44), p. 24 ¶ 3.

[28] Defendant's Original Answer (Doc. #6) ¶¶20, 25.

[29] Krogsgaard Depo (Ex. 6) 58:15 to 59:25.

---

independent contractors as evidenced by the fact Mr. Krogsgaard still goes to get welding supplies with his current employer just as he did for Patterson.[30]

30.     Nor is it germane that Plaintiffs were highly skilled welders[31] because the issue is not the skill of the *worker*, but the skill required for the *work*.   *Carrell v. Sunland Const., Inc.*, *supra*, 998 F.2d at 333; *Robicheaux v. Radcliff Material., Inc.*, *supra*, 697 F.2d at 666.   All that Patterson's belaboring of Plaintiffs' abilities may show is that they were overqualified for the job, but so what.   This is underscored, for example, by Patterson's misplaced emphasis on Mr. Flukinger's *pipe* welding certifications.[32]   As noted earlier, Plaintiffs welded *iron* while working for Patterson, a task requiring less skill than pipe welding.

31.     Patterson's insistence that Plaintiffs' investments exceed the $15,000 per welder in *Carrell v. Sunland Const., Inc.*, *supra*,[33] is likewise true but immaterial, for the amount of a worker's investment is only *half* of the required inquiry under the *relative*-investment criterion. A plaintiff's investment may be considerable, yet less than the employer's.   *See*, *e.g.*, *Hopkins v. Cornerstone America*, *supra*, 545 F.3d at 344 (although the plaintiffs made substantial investments, "Cornerstone's greater overall investment in the business scheme convinces us that the relative-investment factor weighs in favor of employee status").

32.     Defendant asserts that Mr. Lawrence and Mr. Flukinger are independent

---

[30]  See Krogsgaard Depo (Ex. 6) 165:20 to 166:7.

[31] *See* Defendant's Motion for Summary Judgment (Doc. #44), p. 7 ¶ 3 (Mr. Flukinger); *id*., p. 12 ¶ 3 (Mr. Lawrence); *id*., p. 18 ¶ 3 (Mr. Andel); *id*., p. 25 ¶ 1 (Mr. Krogsgaard).

[32] *See* Defendant's Motion for Summary Judgment (Doc. #44), p. 8.

[33] See Defendant's Motion for Summary Judgment (Doc. #44), pp. 10, 14, 20, 27.

contractors in part because they pay personal assistants.[34]  The Defendant fails to inform this Court that these personal assistants are Mr. Lawrence's wife and Mr. Flukinger's girlfriend that has resided with him for some time.[35]  It is difficult to conceive how paying a salary to someone in the same family unit could possibly affect an employee's economic independent.   The Defendant also fails to inform the Court that when taken in the total context of the relationship, the right to hire an employee or helper does not indicate that the Plaintiff was an independent contractor. *Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1049, 1043 (5th Cir.), *cert. denied*, 484 U.S. 924, 108 S.Ct. 286, 98 L.Ed.2d 246 (1987); see also, *Real v. Driscoll Srawberry Associates, Inc.*, 603 F.2d 748, 755 (9th Cir. 1979).   This is especially true when the employees are simply family members of the Plaintiffs.   *Brock v. Mr. W. Fireworks, Inc.*, 814 F.2d at 1052.

33.   Equally irrelevant is Defendant's assertion that Mr. Lawrence and Mr. Flukinger are independent contractors because they rented out some of their old welding equipment or hand income from rent houses.[36]  The testimony of Lawrence and Flukinger cited by Defendant indicates that this income was *de minimis* when compared to their overall compensation and therefore not relevant to the Courts determination of employee status. *Brock v. Mr. W. Fireworks, Inc.*, 814 F.2d at 1049; *Usery v. Pilgrim Eqpt. Co., Inc.*, 527 F.2d 1308 (5th Cir.), *cert. denied*, 429 U.S. 826, 97 S.Ct. 82, 50 L.Ed.2d 89 (1976).

34.   One final instance will suffice to illustrate the blind alleys down which Patterson invites this Court.   Patterson points out that Plaintiffs never received W-2 tax forms.[37]   Citing

---

[34]  See Defendant's Motion for Summary Judgment (Doc. #44), p. 10 ¶ 1 and p. 14 ¶ 2.

[35]  Lawrence Depo (Ex. 7) p. 128:2 to 129:14;   Flukinger Depo (Ex. 8) p. 83:12 to 85:9.

[36]  Defendant's Motion for Summary Judgment (Doc. #44) p. 10 ¶ 2 and p. 12 ¶ 1.

[37]Defendant's Motion for Summary Judgment (Doc. #44), pp. 3-4.

this as a reason to deny recovery implies a breathtakingly perverse Catch-22 which, if accepted, would turn the FLSA (not to mention the Internal Revenue Code) on its head: by misclassifying employees as independent contractors, and failing to issue W-2 tax forms to them as required by law on that basis, employers could circumvent the obligation to pay overtime rates.   A FLSA violation, in other words, would excuse itself.

35.     It is fitting Courts have consistently held that such issues do not affect the court's analysis.   As the 5th Circuit stated in *Robicheaux v. Radcliff Material, Inc.*:

> The fact that they provided their own insurance coverage, listed themselves as self-employed on their tax returns, and had their own business cards and letterheads, does not tip the balance in favor of independent contractor status where, as here, the economic realities of the situation indicate that the employee depended upon the employer for his livelihood, as tested by the cited criteria. A person's subjective opinion that he is a businessman rather than an employee does not change his status. *Usery, supra, 527 F.2d at 1315*. While some of the welders may have been independent contractors for other companies before commencing work with Radcliff, this fact does not preclude a finding that they exchanged this status for the security of the present employee relationship. They thereby obtained the benefit of steady reliable work over a substantial period of time and became economically dependent on a single source of income.

697 at 667. See also *Real v. Driscoll Srawberry Associates, Inc.*, 603 F.2d at 755; *Hopkins v. Cornerstone America*, 545 F.3d at 346;   *Usery v. Pilgrim Eqpt. Co., Inc.*, 527 F.2d at 1315.

36.     It is clear for the record that the Plaintiffs are not sophisticated businessmen as the Defendant implies.[38] Instead the record clearly demonstrates that the Plaintiffs "are far more closely akin to wage earners toiling for a living, than to independent entrepreneurs seeking a return on their risky capital investments."   *Brock v. Mr. W. Fireworks, Inc.*, 814 F.2d at 1051. The issue before the Court is not whether the Plaintiffs were totally dependent on Defendant for their subsistence, but whether the Plaintiffs were economically dependent on Patterson during the time

---

[38] Defendant's Motion for Summary Judgment (Doc. #44) p. 11 ¶ 2.

period they worked for Patterson.  *Baker v. Flint Eng'g & Const. Co.*, 137 F3d at 1443.  The

record reveals that Plaintiffs were employees and were misclassified as independent contractors.

**III.    EVEN IF PATTERSON WERE RIGHT THAT SOME OF THE PERTINENT CRITERIA SUPPORT ITS ASSERTION THAT PLAINTIFFS ARE INDEPENDENT CONTRACTORS, THIS WOULD NOT SUPPORT THE GRANTING OF SUMMARY JUDGMENT IN ITS FAVOR.**

37.    With respect to each Plaintiff, Patterson analyzes each of the five "economic

reality" factors in isolation, thus implicitly inviting this Court to do the same.   That would be a

mistake because the "economic reality" test is a "*totality* of the circumstances test".   *Brock v. Mr.

W Fireworks, Inc.*, 814 F.2d at 1043 (emphasis added).   Hence "no single factor is dispositive of

an entity's 'employer' status under the FLSA[.]"   *Botello v. COI Telecom, LLC*, 2010 WL

3784202, at *7 n.3 (W.D. Tex. Sept. 21, 2010).   The Fifth Circuit made this point emphatically

clear in *Usery v. Pilgrim Eqpt. Co., Inc.*, 527 F.2d 1308 (district court incorrectly found that

workers were independent contractors rather than employees within FLSA):

> Five considerations have been set out as aids to making the determination of dependence, vel non. They are: degree of control, opportunities for profit or loss, investment in facilities, permanency of relation, and skill required.  *No one of these considerations can become the final determinant*, nor can the collective answers to all of the inquiries produce a resolution which submerges consideration of the dominant factor-economic dependence. . . . The five tests are aids—tools to be used to gauge the degree of dependence of alleged employees on the business with which they are connected. It is dependence that indicates employee status. Each test must be applied with that ultimate notion in mind. More importantly, the final and determinative question must be whether the *total* of the testing establishes the personnel are so dependent upon the business with which they are connected that they come within the protection of FLSA or are sufficiently independent to lie outside its ambit.

527 F.2d at 1311-12 (emphasis added; footnote and citation omitted).

38.    Accordingly, when applying the "economic reality" test, "it is erroneous to focus

on a single factor . . . and thereby fail to consider the entire circumstances of the work

relationship." *Brennan v. Partida*, 492 F.2d 707, 709 (5th Cir. 1974) (district court incorrectly determined that workers were independent contractors rather than employees). *Brock v. Mr. W Fireworks, Inc.*, *supra*, for example, reversed a finding that workers were independent contractors rather than employees under the FLSA. The Fifth Circuit held that the district court erred by singling out one criterion (the impermanence of the parties' relationship) to conclude that there was a lack of economic dependence:

> Economic dependence cannot be determined by reference to any one or two factors. Rather, all the *Silk* factors [i.e., the five "economic reality" factors derived from *United States v. Silk*, 331 U.S. 704, 715, 67 S.Ct. 1463, 1469, 91 L.Ed. 1757 (1947)] must be considered and used as a guide. It is axiomatic that economic dependence is not an independent variable with a life of its own—it can only be determined in conjunction with consideration of the economic reality of all the relevant circumstances.

814 F.2d at 1054. This principle applies, in particular, when deciding summary judgment motions. *See*, *e.g.*, *Cromwell v. Driftwood Elec. Contractors, Inc.*, *supra*, 348 Fed. Appx. at 60 (summary judgment in favor of alleged employers, on the ground that welders were independent contractors rather than employees, was error because "*on balance*, . . . as a matter of economic reality, [plaintiffs] were economically dependent upon [defendants]") (emphasis added); *Cooke v. Jasper*, 2010 WL 4312890, at *4 (S.D. Tex. Oct. 25, 2010) (denying alleged employer's motion for summary judgment: "[t]he determination of an employment relationship 'does not depend on . . . isolated factors but rather upon the circumstances of the whole activity'") (quoting *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730, 67 S.Ct. 1473, 1477, 91 L.Ed. 1772 (1947)); *Itzep v. Target Corp.*, 543 F.Supp.2d 646, 652 (W.D. Tex. 2008) (same in action alleging improper classification of plaintiffs as independent contractors rather than employees).

39.     For this reason, it is immaterial, even if it were true, that evidence germane to any one factor alone negates economic dependence, as Patterson insists, because evidence of another

factor indicating economic dependence counterbalances it. *Cromwell v. Driftwood Elec. Contractors, Inc.*, *supra*, 348 Fed. Appx. at 60 (summary judgment was error because, while three factors—high degree of skill, employer did not control details of work, and plaintiffs' substantial investments—negated economic dependence, two factors—permanency of the parties' relationship, and plaintiffs' limited opportunity for profit or loss—tended to support it). Patterson's factor-by-factor tunnel vision, in other words, is not only factually incomplete, but also a legal non sequitur: that evidence is insufficient to create a material issue of fact as to any one criterion does not mean it is insufficient to create a material issue of fact concerning *the overall issue of economic dependence*.

40.     The evidence in the case at bar, even construed most favorably for Patterson, is at best, a toss-up.  For instance, on at least two of the pertinent factors—duration of the parties' relationship, and their relative investment—the record overwhelmingly indicates that Plaintiffs were employees rather than independent contractors.  After all, the *shortest* working duration, even by Patterson's calculations, is ten months (Mr. Flukinger), the time period that supported an employee rather than independent contractor finding in *Robicheaux v. Radcliff Material, Inc.*, *supra*.  And the enormous disparity in the parties' relative investments (Patterson's millions versus Plaintiffs' thousands) leads to the same result.   So let us assume, for argument's sake only, that the remaining three factors tend to support independent contractor status.  This is precisely the equipoise (two criteria indicating employee status, three indicating independent contractor status) which, in *Cromwell v. Driftwood Elec. Contractors, Inc.*, *supra*, was held to preclude summary judgment.

---

## IV.    PLAINTIFFS' OBJECTION THAT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT IS PREMATURE.

41.    As pointed out in its Motion to Enlarge Time for Discovery and Revised Scheduling Order, this case is still, from the standpoint of discovery, in its infancy.[39] The Court has since ordered that new discovery deadlines will be set after the class certification issue is resolved.[40]   Plaintiffs have fully responded to Defendant's Motion but have done so without the benefit of the full discovery process. Plaintiffs assert that the Defendants' Motion is wholly without merit based on the current summary judgment evidence.   Furthermore, Plaintiffs intend to submit their own motion for summary judgment after discovery is more substantially completed. Indeed, in the usual course of most cases summary judgment motions are not filed until after discovery is substantially complete.   Plaintiffs request that Defendant's Motion for Summary Judgment be denied; however, if the Court believes that the Plaintiffs' response is adequate, Plaintiffs request additional time to conduct discovery after the Court has ruled on Plaintiffs' Motion for Conditional Certification.

## <u>CONCLUSION</u>

For the reasons explained above, this Court should deny Patterson's Motion for Summary Judgment, or in the alternative, that the Court defer ruling on Defendant's Motion until after discovery is substantially complete.

---

[39]  Plaintiffs' Opposed Motion to Enlarge Time and for a Revised Scheduling Order (Doc. #41) and Plaintiffs' Unopposed Motion to Enlarge Time and for a Revised Scheduling Order (Doc. #42).

[40]  Order on Unopposed Motion to Enlarge Time and for a Revised Scheduling Order (Doc. #47).

Respectfully submitted,

*/s/ William L. Sciba, III*

By: _____

     WILLIAM L. SCIBA, III
     State Bar No. 00792824
     Federal I.D. No. 19044
     COLE, COLE & EASLEY, P.C.
     302 W. Forrest Street
     Victoria, Texas 77901
     (361) 575-0551 Telephone
     (361) 575-0986 Facsimile
ATTORNEY-IN-CHARGE FOR PLAINTIFFS

## <u>CERTIFICATE OF SERVICE</u>

By my signature above, I certify that a copy of the above and foregoing Plaintiffs' Response to Defendant's Motion for Summary Judgment was provided to all counsel of record, via automated Notice of Electronic Filing to Filing Users and/or certified mail and/or facsimile, in accordance with the Federal Rules of Civil Procedure on this 3rd day of March, 2011.