IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

RICHARD ANDEL, et al., §
 §
    Plaintiffs, §
 §
v. § CIVIL ACTION NO. V-10-36
 §
PATTERSON-UTI DRILLING §
COMPANY LLC, §
 §
    Defendant. §

## MEMORANDUM AND RECOMMENDATION

Pending before the court[1] is Plaintiffs' Motion for Conditional Certification and Notice to Potential Plaintiffs (Docket Entry No. 12).

The court has considered the motion, the responses, all other relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Plaintiffs' motion be **DENIED**.

### I. Case Background

Plaintiffs Richard Andel ("Plaintiff Andel"), Jimmy Flukinger ("Plaintiff Flukinger"), Jerry Krogsgaard ("Plaintiff Krogsgaard"), and Delbert Lawrence ("Plaintiff Lawrence") (collectively, "Plaintiffs"), individually and on behalf of all other similarly-situated current and former workers of Defendant Patterson-UTI

---

[1] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. Docket Entry No. 22.

Drilling Company, LLC ("Defendant"), filed this action on April 29, 2010, pursuant to Section 216(b) of the Fair Labor Standards Act[2] ("FLSA") to recover unpaid overtime compensation.[3]

Plaintiffs seek to certify a class of all of Defendant's current and former welders who were classified by Defendant as independent contractors rather than employees; who worked for Defendant in or around the Texas cities of Victoria, Tyler, and Odessa; and who at any time between April 29, 2007, and the present worked more than forty hours per week in one or more weeks and did not receive payment for their hours worked in excess of forty at one-and-a-half times their regular rate of pay.[4]

In their present motion, Plaintiffs ask the court: (1) to conditionally certify this suit as a collective action; (2) to authorize Plaintiffs to send an approved notice of this action and a consent form to putative class members; and (3) to order production of the name, last known address, last known telephone number, and date of birth or social security number of each putative class member.[5]

---

[2] 29 U.S.C. §§ 201-219.

[3] Docket Entry No. 1, Complaint.

[4] Docket Entry No. 12, Plaintiffs' Motion for Conditional Certification and Notice to Potential Plaintiffs ("Plaintiffs' Motion"), pp. 1, 10-12.

[5] Docket Entry No. 12, Plaintiffs' Motion, pp. 1, 11-12.

Plaintiff Andel worked for Defendant in Victoria, Texas, since early in 2000.[6] He states that Defendant laid him off in 2003 or 2004 but that Defendant rehired him at a lower rate of pay about a month later.[7] He also missed an unspecified amount of work time in 2008 or 2009 due to back problems.[8] He was required to provide his own "welding rigs, truck, welding machine, equipment, tools, and other welding supplies."[9]

Plaintiff Andel provided invoices to Defendant for payment based on the number of hours he worked each day, with the number of days per invoice ranging from one to seven.[10] Sample invoices covering December 29, 2009, to March 25, 2010, indicate that he generally worked an irregular weekly schedule[11] of between approximately thirty-six and seventy-nine hours per week for usually seven-to-twelve hours each day—although he sometimes worked as little as three and as many as thirteen hours in a day—at a rate

---

[6] Docket Entry No. 12, Plaintiffs' Motion, Ex. A, Declaration of Plaintiff Andel, ¶ 3.

[7] Id.

[8] Id.

[9] Id. ¶ 12.

[10] See, e.g., Docket Entry No. 21, Ex. E, Sample Invoices from Plaintiff Andel to Defendant.

[11] The sample invoices show a schedule approximating the following number of days on and off: 3 on, 3 off, 6 on, 1 off, 4 on, 1 off, 8 on, 1 off, 4 on, 3 off, 2 on, 1 off, 7 on, 4 off, 12 on, 2 off, 6 on, 2 off, 3 on, 3 off, 11 on. See id. The court notes that there appear to be some days that may have been double-billed. See e.g., id. (showing invoice #239518 and #239519 each billing six hours for January 28, 2010; showing invoice #239528 billing three hours and #239529 billing nine hours for March 24, 2010).

of $50.00 per hour.[12]

Plaintiff Krogsgaard[13] worked for Defendant in Victoria, Texas, since early in 2000.[14] He worked there for two-and-a-half years, was laid off, returned to work for Defendant about a year later, worked for another five years, and left again.[15] A year later, he returned to work for Defendant and remained there until July 2009.[16] He provided invoices to Defendant for payment based on the number of hours he worked each day, with the number of days per invoice ranging from one to seven.[17] Sample invoices covering June 10, 2009, to July 30, 2009, indicate that Plaintiff Krogsgaard generally worked an irregular weekly schedule[18] of between approximately thirty-four and sixty-six hours per week for usually eight-to-eleven hours each day—although he sometimes worked as little as two-to-three hours in a day—at a rate of $50.00 per

---

[12] See id.

[13] Plaintiff Krogsgaard failed to show for his deposition scheduled on October 8, 2010. See Docket Entry No. 21, Defendant's Response, Ex. D, Deposition of Plaintiff Krogsgaard.

[14] Docket Entry No. 12, Plaintiffs' Motion, Ex. B, Declaration of Plaintiff Krogsgaard, ¶ 2.

[15] Id.

[16] Id.

[17] See Docket Entry No. 22, Ex. H, Sample Invoices from Plaintiff Krogsgaard to Defendant.

[18] The sample invoices show a schedule approximating the following number of days on and off: 4 on, 1 off, 4 on, 3 off, 5 on, 2 off, 4 on, 3 off, 3 on, 1 off, 2 on, 1 off, 4 on, 3 off, 6 on, 1 off, 4 on. See id. The court notes that there appear to be some days that may have been double-billed. See e.g., id. (showing invoice #247905 and #247906 each billing twelve hours for June 17, 2009; showing invoice #247911 and #247912 each billing eight hours for July 8, 2009).

hour.[19]

Plaintiff Flukinger worked for Defendant in Tyler, Texas, from early February 2009 through April 9, 2010.[20] He provided invoices to Defendant for payment based on the number of hours worked each day.[21] Two sample invoices covering September 21, 2009, to September 27, 2009, and November 2, 2009, to November 8, 2009, show that Plaintiff Flukinger worked seven days each of those weeks for nine-to-eleven hours each day at a rate of $50.00 per hour.[22]

Plaintiff Lawrence worked for Defendant in Tyler, Texas, from mid-April 2008 through April 9, 2010.[23] He provided invoices to Defendant for payment based on the number of hours worked each day.[24] Sample invoices covering December 21, 2009, to January 3, 2010, indicate that Plaintiff Lawrence generally worked six days a week for nine-to-eleven hours each day at a rate of $55.00 per hour.[25] He stated that because of the long hours he worked for

---

[19] See id.

[20] Docket Entry No. 12, Plaintiffs' Motion, Ex. C, Declaration of Plaintiff Flukinger, ¶ 3.

[21] See, e.g., Docket Entry No. 22, Defendant's Response, Ex. F, Sample Invoices from Plaintiff Flukinger to Defendant.

[22] See id.

[23] Docket Entry No. 12, Plaintiffs' Motion, Ex. D, Declaration of Plaintiff Lawrence, ¶ 3.

[24] See, e.g., Docket Entry No. 22, Ex. G, Invoices from Plaintiff Lawrence to Defendant. The invoices provided appear to show that Plaintiff Lawrence generally, though not always, submitted invoices on a weekly basis. See id.

[25] See Docket Entry No. 22, Ex. G, Invoices from Plaintiff Lawrence to Defendant.

Defendant, he lost his other customers because he was unable to work for them.[26] Using his own funds, he bought the particular types of welding rods that Defendant required for its welding projects.[27] He also provided his own "welding rigs, trucks, welding machines, fuel, rods, insurance on work performed, equipment, tools and other welding supplies."[28]

## II. <u>Legal Standard</u>

The FLSA requires covered employers to pay non-exempt employees for hours worked in excess of defined maximum hours. 29 U.S.C. § 207(a). It allows employees to bring an action against their employers for violation of its hour and wage provisions. <u>See</u> 29 U.S.C. §§ 215-216. An employee may bring this action against his employer on "behalf of himself . . . and other employees similarly situated. No employee shall be a party plaintiff to any such an action unless he gives his consent in writing to become a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). Courts have the authority to implement the representative action process by facilitating notice to potential plaintiffs, i.e., to persons alleged to be "similarly situated" to the named plaintiff(s). <u>Hoffman-La Roche, Inc. v. Sperling</u>, 493 U.S. 165 (1989).

---

[26] Docket Entry No. 12, Plaintiffs' Motion, Ex. D, Declaration of Plaintiff Lawrence, ¶ 8.

[27] Id. ¶ 10.

[28] Id. ¶ 12.

In the Fifth Circuit, the determination of whether plaintiffs are "similarly situated" is generally made by using one of two analyses: (1) the two-step analysis described in <u>Lusardi v. Xerox Corporation</u>, 118 F.R.D. 351, 359 (D.N.J. 1987), or (2) the "spurious class action" analysis described in <u>Shushan v. University of Colorado</u>, 132 F.R.D. 263 (D. Colo. 1990). See <u>Mooney v. Aramco Servs. Co.</u>, 54 F.3d 1207, 1216 (5th Cir. 1995) (expressly declining to decide which of the two analyses is appropriate).[29]

Under the <u>Lusardi</u> approach, the court first "determines whether the putative class members' claims are sufficiently similar to merit sending notice of the action to possible members of the class." <u>Acevedo v. Allsup's Convenience Stores, Inc.</u>, 600 F.3d 516, 519 (5th Cir. 2010) (citing <u>Mooney</u>, 54 F.3d at 1213-14). The court makes this determination by using a fairly lenient standard, requiring only "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." <u>Mooney</u>, 54 F.3d at 1214 & n.8. If the court determines that the employees are similarly situated, then notice is sent and new plaintiffs may "opt in" to the lawsuit. <u>Acevedo</u>, 600 F.3d at 519 (citing <u>Mooney</u>, 54 F.3d at 1214). Next, once discovery has largely been completed, and, thus, more information on the case

---

[29] <u>Mooney v. Aramco Services Co.</u> was an action under the Age Discrimination in Employment Act ("ADEA"), but it applies here because the ADEA explicitly incorporates Section 216(b) of the FLSA to also provide for an "opt-in" class action procedure for similarly-situated employees. See <u>Mooney</u>, 54 F.3d at 1212.

made available, the court makes a final determination on whether the plaintiffs are similarly situated and whether they can proceed together in a single action. Id.

According to the Fifth Circuit, the Shushan approach, known as the "spurious class action" analysis, is similar to the class certification procedure used under Federal Rule of Civil Procedure 23 ("Rule 23"):

> Shushan espouses the view that [29 U.S.C. § 216(b) ("Section 216(b)")] merely breathes new life into the so-called "spurious" class action procedure previously eliminated from [Rule 23]. Building on this foundation, the court determined that Congress did not intend to create a completely separate class action structure for the FLSA . . . context, but merely desired to limit the availability of Rule 23 class action relief under . . . [the FLSA]. In application, the court determined that Congress intended the "similarly situated" inquiry to be coextensive with Rule 23 class certification. In other words, the court looks at "numerosity," "commonality," "typicality" and "adequacy of representation" to determine whether a class should be certified. Under this methodology, the primary distinction between a . . . [FLSA] representative action and a [Rule 23] class action is that persons who do not elect to opt-in to the . . . [FLSA] representative action are not bound by its results. In contrast, Rule 23 class members become party to the litigation through no action of their own, and are bound by its results.

Mooney, 54 F.3d at 1214.

The Fifth Circuit has not ruled which method the courts should use to determine whether plaintiffs are sufficiently "similarly situated" to advance their claims together in a single action under Section 216(b). Acevedo, 600 F.3d at 518-19. Although it has stated that not all class action standards are applicable to

8

Section 216(b) actions, it has explicitly left open the question of whether the Lusardi approach, the Shushan approach, or some third approach should be used in determining whether employees' claims are sufficiently similar to support the maintenance of a representative action. Id. (citing Mooney, 54 F.3d at 1216; LaChapelle v. Owens-Ill., Inc., 513 F.2d 286, 288 (5th Cir. 1975)).

However, most courts in this district follow the Lusardi approach in suits under Section 216(b). See, e.g., Tolentino v. C & J Spec-Rent Servs., Inc., No. C-09-326, 2010 WL 2196261, at *3 (S.D. Tex. May 26, 2010) (collecting cases). The Lusardi approach is consistent with Fifth Circuit dicta, stating that the two-step approach is the typical manner in which these collective actions proceed. Sandoz v. Cingular Wireless LLC, 553 F.3d 913, 915 n.2 (5th Cir. 2008). The Fifth Circuit has also stated that "[t]here is a fundamental, irreconcilable difference between the class action described by [Rule 23] and that provided for by [Section 216(b)]," i.e., the "opt out" procedure for class members under Rule 23 as opposed to the "opt in" procedure under Section 216(b). LaChapelle, 513 F.2d at 288; see also Donovan v. Univ. of Tex. at El Paso, 643 F.2d 1201, 1206 (5th Cir. 1981) ("The FLSA procedure, in effect, constitutes a congressionally developed alternative to the [Rule 23] procedures."). This court, therefore, will analyze Plaintiff's claims using the Lusardi method.

The present case is at the "notice stage" of the Lusardi

analysis. At this stage, the court's decision is "made using a fairly lenient standard;" the plaintiffs need only make a minimum showing to guide the court's determination whether to issue notice to potential class members. Mooney, F.3d at 1214.

In lieu of Fifth Circuit guidance on the appropriate test to use at the notice stage of the Lusardi analysis, courts are split on the appropriate elements to consider in determining whether to grant conditional certification. Some courts use three elements, requiring the plaintiff to show that: (1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit. See, e.g., Cantu v. Vitol, Inc., No. H-09-0576, 2009 WL 5195918, at *4 (S.D. Tex. Dec. 21, 2009) (unpublished); Tolentino, 2010 WL 2196261, at *8-9. Other courts, however, have rejected the third, non-statutory element. See, e.g., Dreyer v. Baker Hughes Oilfield Operations, Inc., No. H-08-1212, 2008 WL 5204149, at *3 (S.D. Tex. Dec. 11, 2008) (unpublished); Heckler v. DK Funding, LLC, 502 F. Supp. 2d 777, 780 (N.D. Ill. 2007). Because Defendant only moves that Plaintiffs cannot meet the second element of the test, the court need not decide whether Plaintiffs need to meet the third element.

### III. Analysis

Defendant urges the court to reject Plaintiffs' request for a conditional class action certification. It argues that Plaintiffs cannot meet the second element of the <u>Lusardi</u> test, because Plaintiffs cannot demonstrate the existence of other welders who are similarly situated.[30] Defendant avers that the extremely fact-intensive nature of the analysis determining whether each worker is an employee or independent contractor, and thus subject to the overtime provisions of the FLSA, must necessarily be resolved on a case-by-case basis.[31]

Although class action certification is procedural, determining whether it should be applied in a given case cannot be done in a vacuum. The manner and scope of its application depends upon the nature and purpose of the substantive law to be enforced, i.e., in the context of the substantive law of the asserted claims. <u>See, e.g.</u>, <u>Vuyanich v. Republic Nat. Bank of Dallas</u>, 82 F.R.D. 420, 429 (N.D. Tex. 1979) (noting the same in a Title VII lawsuit). "The modern manifestation of the class action is an efficacious jurisprudential tool, whose applicability is neither universal or monocentric." <u>Jones v. Diamond</u>, 519 F.2d 1090, 1099 (5th Cir. 1975). "Rather, the trial court must ascertain the appropriateness of the class procedure only after a sensitive weighing of all the facts." <u>Id.</u> In sum, the court must determine "what is the most

---

[30] Docket Entry No. 21, Defendant's Response, pp. 1-2.

[31] <u>Id.</u>

11

sensible approach to the class determination issue which can enable the litigation to go forward with maximum effectiveness from the viewpoint of judicial administration." Id.

Here, the substantive law underlying the court's analysis is whether Plaintiffs are employees under the FLSA, which is a legal, not a factual, finding.[32] See Lindsley v. BellSouth Telecomms. Inc., No. 09-30699, 2010 WL 4609109, at *1 (5th Cir. Nov. 15, 2010) (unpublished) (citing Brock v. Mr. W Fireworks, Inc., 814 F.2d 1042, 1045 (5th Cir. 1987)). The court determines whether a worker qualifies as an employee under the FLSA by focusing on "whether, as a matter of economic reality, the worker is economically dependent upon the alleged employer or is instead in business for himself." Hopkins v. Cornerstone Am., 545 F.3d 338, 343 (5th Cir. 2008). "The determination of whether an individual is an employee or independent contractor is highly dependent on the particular situation presented." Thibault v. Bellsouth Telecomms., Inc., 612 F.3d 843, 848 (5th Cir. 2010). No single factor will be determinative of the court's inquiry. Hopkins, 545 F.3d at 343.

The five non-exhaustive factors most often considered by the courts are: "(1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's

---

[32] Although the parties differ greatly on the interpretation and meaning of the facts as they affect the outcome of this case, there appears to be no genuine issue of material fact with respect to what those facts are.

12

opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship." Hopkins, 545 F.3d at 343.

The economic realities test is "highly dependent on the particular situation presented," and thus requires a fact intensive analysis. See Thibault, 612 F.3d at 848. Although each named and putative plaintiff in this lawsuit is a welder, the court must conduct an individualized analysis to determine whether each welder is an employee or an independent contractor under the FLSA. The court finds that this individualized analysis precludes class certification.

The differences cited by Defendant show that Plaintiffs and putative class members may not be similarly situated and that, instead, an individualized analysis would be required to determine whether each worker was an employee or an independent contractor. This individual analysis would contravene a primary purpose behind class action lawsuits, i.e., the promotion of judicial economy.

Defendant cites to a number of cases wherein courts have denied class certification because it was inappropriate to determine whether a particular worker was an employee or an individual contractor on a class-wide basis.[33] Plaintiffs aver that

---

[33] See Docket Entry No. 21, Defendant's Response, pp. 9-10 (citing Bamgbose v. Delta-T Group, Inc., 684 F. Supp. 2d 660, 668-69 (E.D. Pa. 2010); Westfall v. Kendle Int'l CPU, L.L.C., No. 1:05-cv-00118, 2007 WL 486606, at *8-9 (N.D. W. Va. Feb. 15, 2007) (unpublished); Reich v. Homier Dist. Co., Inc., 362

13

all they need produce is "*some evidence* that [Defendant] subjected a group of similarly situated potential class members to a single decision, policy or plan [in violation of] the FLSA."[34]

Plaintiffs would be correct if there was no question whether the putative plaintiffs fell under the protections of the FLSA, but, rather, only whether the class were similarly situated to one another and subject to a single decision, policy, or plan. Here, however, the court must resolve first whether the FLSA even covers each Plaintiff and, therefore, each putative plaintiff.

Even if, <u>arguendo</u>, the court later resolves the issue in favor of employee status for each of the named Plaintiffs, the briefs and evidence show that there are enough differences between each individual Plaintiff that the court would still be required to conduct an individualized analysis of each putative plaintiff before it could be satisfied that each one fell under the auspices of the FLSA. Simply put, because the named Plaintiffs cannot

---

F. Supp. 2d 1009, 1013-14 (N.D. Ind. 2005); <u>Pfaahler v. Consultants for Architects, Inc.</u>, 2000 WL 198888, at *2 (N.D. Ill. Feb. 8, 2000)); Docket Entry No. 28, Defendant's Jan. 6, 2011 letter to the court (attaching <u>Demauro v. The Limo, Inc.</u>, No. 8:10-cv-413-T-33AEP, 2011 WL 9191 (M.D. Fla. Jan. 3, 2011)). Plaintiffs also cite to a number of cases wherein they state that courts have granted class certification even when there is an issue with respect to whether a particular worker is an employee or an individual contractor on a class-wide basis, although the court's review of these cases indicates that they are not all as clear cut as Plaintiffs suggest. <u>See, e.g.</u>, Docket Entry No. 40, Plaintiffs' Jan. 12, 2011 letter to the court (citing <u>Vargas v. Richardson Trident Co.</u>, No. H-09-1674, 2010 WL 730155 (S.D. Tex. Feb. 22, 2010)(unpublished); <u>Wood v. Sundance Prof'l Servs., LLC</u>, No. 08-2391-JAR, 2009 WL 484446 (D. Kan. Feb. 26, 2009)(unpublished); <u>Houston v. URS Corp.</u>, 591 F. Supp. 2d 827 (E.D. Va. 2008); <u>Kerce v. W. Telemarketing Corp.</u>, 575 F. Supp. 2d 1354 (S.D. Ga. 2008); <u>Prater v. Commerce Equities Mgmt. Co., Inc.</u>, No. H-07-2349, 2007 WL 4146714 (S.D. Tex. Nov. 19, 2007)(unpublished)).

[34] Docket Entry No. 25, Plaintiffs' Reply, p. 3.

clearly be deemed FLSA employees without individualized analysis, neither can the putative plaintiffs. As such, certifying a class action under these facts would be inappropriate and, quite simply, would not promote judicial economy.

FLSA cases commonly have "facts pointing in both directions" regarding the issue of employee status. Herman v. Express Sixty-Minutes Delivery Serv., Inc., 161 F.3d 299, 305 (5th Cir. 1998 (quoting Carrell, 998 F.2d at 334). Although Defendant has provided a thorough discussion of each factor under the economic reality test and how each Plaintiff's relationship with Defendant varies under that test, and though Plaintiffs minimize these differences in their attempt to show that they are similarly situated for the purposes of the court's Lusardi analysis, the court does not find it necessary to conduct its own detailed analysis at this time. Having thoroughly reviewed the evidence submitted by the parties, the court agrees with Defendant that an individualized analysis will be required for each welder who seeks to join this case to determine his relationship with Defendant. To take but a few examples, the number of hours worked each week varied significantly; the number of hours worked each day varied significantly; the pattern of days on and days off of work varied significantly; the pattern of invoice submission varied significantly; and the length of time each Plaintiff worked for

Defendant varied significantly.[35] Therefore, the court finds that certifying the class requested by Plaintiffs would be inappropriate under these circumstances.

Accordingly, the court **RECOMMENDS** that Plaintiffs' motion for class certification be **DENIED**.

## IV. Conclusion

Based on the foregoing, the court **RECOMMENDS** that Plaintiffs' motion for class certification be **DENIED**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal. The original of any written objections shall be filed with the United States District Clerk electronically.

**SIGNED** in Houston, Texas, this 16th day of March, 2011.

Nancy K. Johnson
United States Magistrate Judge

---

[35] The court does not decide at this time whether these differences mean that some Plaintiffs will be deemed employees and some deemed independent contractors. The court only finds that these variations will require an individualized analysis of the circumstances of each Plaintiff's employment with Defendant.